## PEOPLE'S MUTUAL INSURANCE COMPANY *vs.* OTIS ALLEN & another.

The record of losses kept by a mutual insurance company is sufficient *prima facie* evidence
that such losses have occurred, in an action to recover an assessment laid upon the
members.

An assessment by a mutual insurance company is valid that is based upon a computa-
tion of the losses from month to month, and includes in the losses chargeable upon each
policy all those of the entire month in which it expires, excluding those of the month
in which it began.

A premium note, payable in such portions and "at such times as the directors may agree-
ably to their by-laws require," to a mutual insurance company, whose by-laws provide
that the deposit note shall be double the premium, and "that on all policies for less
than a year the deposit note may be for such a sum as the president may determine;"
and which has issued such policies, with a deposit note of one dollar and a premium paid
of a larger sum; is not invalidated by a slight disproportion, occasioned by laying an
assessment on the deposit notes only, instead of the amount of the premiums and de-
posit notes.

An assessment by a mutual insurance company is not invalid because it is made to cover
losses occasioned by bad investments; nor because it is laid in place of a previous illegal
assessment which the directors have not enforced; nor because in consequence thereof it
has been delayed for some months.

ACTION OF CONTRACT by a mutual insurance company upon
a premium note, made on the 1st of January 1852. in con-

sideration of a policy that day issued by the plaintiffs to the defendants for one year, and by which the defendants promised to pay to the plaintiffs " the sum of two hundred dollars, with interest, in such portions and at such times as the directors may agreeably to their by-laws require," to recover an assessment laid on the 13th of September 1854.

The case was referred to an auditor, and submitted to the decision of the court upon his report in favor of the plaintiffs, as upon an agreed statement of facts.

The plaintiffs' secretary produced before the auditor the " loss book" of the corporation, containing the date of issuing each policy, the amount insured, the date of the loss, and the amount allowed by the directors, when adjusted; and testified that this was the only record of losses kept by the plaintiffs. The defendants objected to its admission, and contended that the plaintiffs must prove that the losses had actually occurred. But the auditor admitted it as *prima facie* evidence of the losses therein recorded.

The other objections argued by the defendant and the material facts are stated in the opinion.

*I. W. Beard & J. Nickerson*, for the plaintiffs.

*B. Dean*, for the defendants.

DEWEY, J. 1. The ruling of the auditor as to the competency of the evidence offered to prove that losses by fire had occurred was correct.

2. It furnished no valid objection to the legality of the assessment, that it was based upon a computation of losses from month to month, without regard to the fact that policies expired at various times during each month; nor that the company adopted as the general rule of computing losses chargeable on a policy, to take the months in which the policy terminated, and exclude that in which it commenced; that is, upon a policy commencing at noon January 1st 1852, and expiring at noon January 1st 1853, the company might exclude the losses of January 1852, and include those of January 1853. As one or the other of these months must be necessarily excluded in computing the entire monthly losses, a general rule applicable

to all such cases was not objectionable, though it might exclude some losses for which the party should in strictness be chargeable, and include some for which he would not in strictness be chargeable; such being the necessary result of a computation of entire monthly losses.

3. The objection that the assessment was not made upon the amount of premiums and deposit notes, but on the basis of the deposit notes exclusively, is one of more doubt. Assessments made under the Rev. Sts. *c.* 37, § 31, are required to be made upon the basis of both premiums and deposits.

The answer to this objection must be found in the fact stated by the auditor, that the difference in the result of the two modes of computation " would be a comparatively unimportant diminution of the assessment on the large notes," and in the by-laws regulating the small class of policies for a time less than a year. It is obvious that as to all other policies, the deposit note being double the premium, the result must be precisely the same, whether assessments were based upon deposit notes or deposits and premiums, if it were uniformly applied to all cases. The only cases in which any practical difference results are those of a small number of policies issued under the provisions of the sixth article of the by-laws, providing that " on all policies for less than a year the deposit note may be for such a sum as the president may determine." Under this provision, certain policies were issued, the assured giving his deposit note for one dollar, while the premium paid was a larger sum. The precise reason for this mode of adjusting the amount of deposit notes, as compared with the premium paid, does not appear. These policies are understood to have been for short periods, and to have required a greater cash premium to be paid, which was directly applicable to the uses of the company, than the ordinary policies of the company. This note by its terms was to be paid " in such portions and at such times as the directors may agreeably to their by-laws require." It was competent for the party giving the deposit note to subject himself to a liability greater than that imposed by the revised statutes. It might be entirely reasonable that a party, who had paid as a

cash premium for a short risk a sum much larger than the average rate of premium, should be exonerated from giving a deposit note in double the amount of premium paid, or that such premium should be the basis of an assessment.

The fourteenth article of the by-laws authorizes the president and directors to "assess on each member, in case losses should require it, a sum in addition, not exceeding the amount paid by him as premium and deposit note, and collect the same without delay." This is a different provision from that of the Rev. Sts. c. 37, § 31, as to the amount of the liability to be assessed, and also as to the provision of that section, requiring the assessment to be made "upon the members in proportion to the amount of their premiums and deposits severally for seven years."

Upon the facts existing in the present case, the court are of opinion that this assessment is not rendered invalid by reason of the manner of its being ordered by the directors to be assessed, making the notes of the assured the basis, and deducting from the amount so assessed against any policy the cash deposited to the credit thereof.

4. It is no ground for any objection to the assessment, that the company had made a loan of $2000, without adequate security from the borrower, whereby the same was lost. The assessment was in fact ordered by the directors for the payment of expenses and losses for which the company were liable. They might be in the greater necessity for money by reason of losses by bad investments of their cash funds, but this should not deprive them of the power to make the necessary calls upon their members to discharge their liabilities and expenses.

5. Nor does it invalidate this assessment, that there had been a previous assessment laid by the directors to meet some of these losses and a small number of the members had paid that assessment; the directors having subsequently become satisfied that such assessment was illegally laid, and having provided, in the new assessment, that those who had paid the previous one should be credited with it on the new assessment.

6. The delay in making this assessment was not, under the circumstances shown in the case, such as to defeat it, if i*

embraced no losses accruing after the month of January 1853 We are aware that such assessments under the provisions of the revised statutes, and for the benefit of those who seek payment for losses under their policies, are required to be made forthwith, or upon failure so to do a liability may attach to the directors personally. But this has not been considered as affecting the assessment, if not literally complied with. It would seem somewhat remarkable if it were otherwise held, and it might thus be the means of defeating the very purpose for which the deposit notes are required to be taken. Such delay may properly arise from various causes. That which would most frequently occur would be a case of controverted liability for a loss by fire. It might be a subject of protracted litigation, when of course no assessment would be made until the liability was fixed. It might be, as in the present case, that the delay as to the assessment for the earlier losses embraced in the arrears assessed arose from the fact that an earlier assessment had failed to be effectual by some irregularity in making it, not known to be such at the time it was made. In the opinion of the court, the delay in the present case does not vitiate the assessment. *Marblehead Insurance Company* v. *Underwood,* 3 Gray, 213.

7. As to the various other points suggested in the brief of the defendants, but not argued, we perceive none that can avail the defendants.

Giving full effect to the finding of the auditor as to matters properly passed upon by him, in the opinion of the court

*Judgment should be rendered for the plaintiffs.*